## CHEMICAL NATIONAL BANK V. EDWARD KIAM.

### Decided November 7, 1908.

**1.—Marshaling Securities.**

The doctrine of marshaling securities has, as a general rule, no application as between a debtor and a creditor; but where the creditor holds a claim against the debtor only as collateral security for the debt of a third party, and both the creditor and the debtor are creditors of such third party, the doctrine may be invoked by the debtor.

**2.—Same—Case Stated.**

H. being indebted to a bank transferred to it the note of K. and certain stocks and bonds as collateral security; H. was adjudged a bankrupt, and at the time of the adjudication was indebted to K. in an amount larger than the amount of K.'s note transferred to the bank; the bank sued K. on the note; K. invoked the doctrine of marshaling securities, alleging, among other matters, that the stocks and bonds and other securities held by the bank and in which it alone was interested, were more than sufficient to pay the indebtedness of H. to it. Held, that while K. occupied the relation of debtor to the bank they were both creditors of H. and the doctrine of marshaling securities was applicable.

**3.—Inadequate Remedy—Injunction.**

When the remedy or right of subrogation will not afford as practical, prompt and efficient protection and relief as injunction, the remedy by injunction may be invoked.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*O. T. Holt* and *W. H. Haynes,* for appellant.

*Baker, Botts, Parker & Garwood,* for appellee.

PLEASANTS, CHIEF JUSTICE.—The appellant brought this suit to recover upon a note for $10,000 executed by appellee in favor of T. W. House and transferred by House to appellant.

Appellee answered by general demurrer and general denial, and by cross-action sought affirmative relief. The allegations of the cross-bill are, in substance, that the note sued on was transferred to appellant by T. W. House along with other notes payable to said House, and certain

stocks and bonds owned by him, as collateral to secure the payment of notes due by said House to appellant, of the aggregate amount of $110,-000; that since the transfer of said notes and other collateral to appellant the said House, who was engaged in the banking business in the city of Houston as a private banker, has been adjudged a bankrupt, and his estate is now being administered in the District Court of the United States for the Southern District of Texas by J. S. Rice, trustee appointed by said court; that at the time House was so adjudged a bankrupt the appellant had in its possession as collateral to secure House's said indebtedness to it notes, stocks and bonds of value in excess of said indebtedness, and in addition thereto had a cash deposit in its hands of $36,131.44, which it was duly authorized to apply to said indebtedness; that since said adjudication in bankruptcy appellant has applied said cash upon said indebtedness, and has made collections upon other of the notes held by it as collateral, and has applied same upon said indebtedness, the total amount of collections and cash deposit so applied being $85,979.89, leaving a balance due on said indebtedness of House to it of not exceeding $24,920.11; that to secure said balance due it by said House appellant had in its hands, in addition to the note herein sued on and the other notes transferred to it by House as aforesaid, stocks and bonds of the aggregate value of $78,900; that said stocks and bonds have a fixed definite cash market value of not less than the amount above stated, and that under the terms of the assignment from House to appellant it is fully authorized to sell said securities without notice and apply the proceeds to the payment of said indebtedness due it by House; that the note herein sued on was not due at the time House was adjudged a bankrupt, and that appellee at said time had on deposit in the bank of said House the sum of $16,860.42; that under the law the defendant is entitled against the said T. W. House and his estate, and the trustee thereof, to a lien on the note herein sued upon for the payment of the amount due from said estate of House to this defendant on account at the date of the bankruptcy of the said House, and is entitled to have the note sued on herein canceled, and the amount thereof set off and applied to the payment of appellee's claim against the estate of the said House; that the note sued on herein, therefore, is charged with a double lien, to wit, a lien in favor of said appellant to secure the payment of the indebtedness of said House to it, and a lien in favor of the appellee to secure the payment of his claim against the estate of said House; that said stocks and bonds are not subject to a double lien or double liability, no one having a lien upon them except appellant, and that, in equity, the appellee is entitled to have the assets in the hands of appellant to secure its indebtedness marshaled, and to have said stocks and bonds, upon which no lien exists in favor of any person except appellant, first sold or realized upon, under the terms of said contract between said House and appellant, and the proceeds applied to the payment of the remainder of the indebtedness of said House to appellant, before appellant is entitled to resort to the note sued on in this cause, and if said stocks and bonds should produce sufficient funds, as appellee alleged they would do, to pay off the remainder of said indebtedness of House to appellant, then appellant could not, in equity, collect the note sued on and apply the proceeds to payment of its claim, but appellee

would be entitled to have said note canceled and surrendered to him, and the amount thereof set off and entered as part payment of his claim against said House's estate. It is further alleged that, among the notes of said House's customers held by appellant as collateral, there are many which are not subject to any equities or rights of setoff on the part of the makers of said notes, and these notes furnish additional security, to which said appellant should resort before attempting to enforce collection of the note sued on in this case; but that, ignoring appellee's rights and equities, appellant has reached some kind of agreement or understanding with said trustees of said House's estate and his attorneys, to the effect that appellant would not proceed to realize upon said stocks and bonds and notes, upon which it and it alone has a lien, but instead, would proceed to bring this suit for the unjust and inequitable purpose of obtaining judgment against appellee and cutting off and depriving him of his equitable rights in the note herein sued upon, to wit, his right to have said notes subjected to a lien in his favor, and set off and applied to the discharge and payment *pro tanto* of the claim and account which this defendant has against said estate of House on his deposit account, as before explained; that to permit this would work a manifest wrong and injury upon appellee, and deprive him of his right of setoff without producing any benefit whatever to the estate of said House or to said plaintiffs.

It is further alleged that appellant has filed a claim in the bankruptcy court admitting that it holds the stocks and bonds and notes above referred to as collateral to secure the payment of an alleged indebtedness of T. W. House to it; that if appellant be required to proceed upon the other collateral held by it it will be able to collect its notes in full, without realizing upon the note herein sued upon, and thereupon this note will revert to the estate of said House, and defendant will be enabled to assert his right to said note as a security for the payment *pro tanto* of his account against said House's estate, but that the estate of House is insolvent, and will not pay its general creditors exceeding forty cents on the dollar, and if the appellant is allowed to proceed and take judgment against the appellee on the note sued on herein, and exact payment thereof from him, he will entirely lose the benefit of his security, and will be obliged to accept forty cents on the dollar, or less, upon his indebtedness against the said House, but if appellant is required to realize upon said stocks and bonds they will more than pay off the indebtedness of said House to appellant, and it will be compelled to return the note sued on to the trustee of said House, and the said trustee will be compelled to settle with appellee by surrendering said note and deducting the amount thereof from his claim against said House, and appellee will only be required to accept dividends on the remainder of his said claim against House after deducting said note.

The prayer of the cross-bill is for process, and that the court will enter an order staying proceedings in this suit and grant an injunction restraining the appellant, its agents, attorneys, employes and successors from proceeding further with this suit, or in any manner attempting to institute suits, actions or proceedings of any kind, in any court or tribunal for the purpose of attempting to collect the note sued on in this case, until the further orders of the court may permit; that the

court will require appellant to make an exhibit showing in detail all amounts owing by the estate of said House to appellant on the notes and indebtedness before mentioned, showing all collections made by it from the securities which it held at the time House became bankrupt, showing, also, a complete list of the securities it now holds of said House, which are not subject to a lien in favor of any other person by way of security, setoff or otherwise, including a complete list of the stocks and bonds held by it, and that the court will further order that, before proceeding further with this suit or with any action or proceeding to collect the indebtedness sued on herein, it shall realize upon said stocks and bonds, and other securities in its hands which are subject only to a lien in its favor, and if said stock and bonds and other securities which are subject only to its lien produce a sufficient amount to pay off the remainder of the indebtedness of House to it, then the further prosecution of this suit, or of any suit by the appellant to collect the indebtedness herein sued on, may be permanently stayed and enjoined, and that appellant be directed and required by the court to turn back the note sued on herein to said trustee, or to deliver the same to the appellee, in order that the amount thereof may be set off and applied *pro tanto* to the appellee's claim on the estate of T. W. House. This cross-bill was verified by affidavit of appellee.

Appellant replied to appellee's cross-bill by general demurrer and general denial, and by special plea in which it admits that it holds the note sued on as collateral to secure an indebtedness due it by T. W. House, which it alleges is about $50,000. It is further alleged in said special plea that appellant holds collateral of the face value of about $133,000, including the note sued on, to secure the payment of said indebtedness, said collateral consisting of promissory notes, stocks and bonds, but alleges that some of the notes are almost worthless, the makers having been adjudged bankrupts; that if appellant is forced to sell the stocks and bonds held by it at this time the same will have to be sacrificed and sold at a discount, which loss will fall on the creditors of the bankrupt estate of T. W. House. This pleading is not verified.

The cause was heard on the pleadings, the substance of which has just been stated, and the court entered an order reciting that "The court, being of the opinion that the proceedings in this suit ought to be suspended temporarily until the said plaintiff (appellant) shall exhaust its recourse against the stocks and bonds held by it as collateral to secure the indebtedness of the estate of T. W. House, bankrupt, to it, as prayed for in the defendant's cross-petition, and it appearing that the defendant has given bond in the sum of $25,000, the amount fixed by the court, and that said bond has been approved by the clerk of this court; it is therefore ordered, adjudged and decreed by the court that said plaintiff, the Chemical National Bank, its agents and attorneys be, and they, and each of them are, hereby enjoined and restrained from the further prosecution of this suit until the said Chemical National Bank shall have exhausted its recourse against the stocks and bonds held by it as collateral to secure the indebtedness of the estate of T. W. House, bankrupt, to it; that further proceedings in this suit be, and the same are, hereby suspended temporarily, and the suit shall stand continued from term to term of this court, without further order, until said plaintiff shall have

exhausted its remedies against said collateral, as hereinbefore provided, after which this cause shall stand for the further orders of this court." Then follows a description of the stocks and bonds referred to, which it is unnecessary to set out. This appeal is prosecuted from the order above set out.

We are strongly inclined to the opinion that no appeal lies from this order, and that, therefore, the appeal should be dismissed, but as both parties insist that the order is one from which the right of appeal is given by our statute, and that we have jurisdiction, we have deemed it proper to resolve the doubt in favor of our jurisdiction.

Under the single assignment presented in its brief appellant assails the order above set out on the ground that the doctrine of marshaling securities, upon which said order is based, can only be applied as between creditors, and appellee, being a debtor of appellant, can not invoke such doctrine against it.

It is unquestionably true that the doctrine of marshaling securities has, as a general rule, no application as between a debtor and creditor, and as between a creditor and one who occupies, as to him and the subject matter of the suit, only the relation of an original and primary debtor, there can be no exception to this general rule. We think the facts of this case, however, distinguish it from those cited and relied on by appellant in which the general rule above stated is enforced. Appellee and appellant are both creditors of the estate of the bankrupt T. W. House, and by the plain and unambiguous terms of the bankrupt statute, as against said estate and its general creditors, appellee had the right to a credit at par of a sufficient amount of the sum due him by said estate to cancel and discharge his indebtedness thereto evidenced by the note sued on. Bankruptcy Act, 1898, sec. 68, subd. A; Collier on Bankruptcy, page 573; In re Little, 6 Am. Bank. Rep., 682; In re Meyer & Dickinson, 5 Am. Bank. Rep., 593; in re Shults, 13 Am. Bank. Rep., 84.

While this right to have this claim against said estate paid in full to the amount necessary to discharge his note may not be considered technically as giving him a lien upon said note, it gave him such an interest in the note as entitled him, we think, to invoke, as against appellant, who holds said note only as collateral security, the equitable doctrine of marshaling securities which, to quote from the 16 Am. & Eng. Ency. of Law, page 1256, "Depends upon the principle that a person having two funds to satisfy his demands shall not by his election disappoint a party having but one fund. The general rule is that if one creditor, by virtue of lien or *interest*, can resort to two funds, and another to one of them only, the former must seek satisfaction out of that fund which the latter can not touch."

Again, on the same page, the author says: "The basis of the doctrine of marshaling is the equitable principle that a person having a right to satisfy his debt or claim out of two funds, to but one of which another person can resort, shall be compelled first to exhaust the fund to which the other can not resort before coming upon one available to both. Thus, the person having an interest in the double fund is prevented by a court of equity from exercising his right to enforce that interest, to the prejudice of a person having an interest in the single fund only. In cases

where the claim of paramount creditor would, if satisfied out of the single fund, defeat wholly or in part the claim of the other creditor, a court of equity, proceeding upon the principle that such an exercise of the paramount creditor's power would be most unjust and unconscientious, will interfere not, indeed, to alter or destroy the power, but to prevent it from being made an instrument of injustice."

Again on page 1259 the same author says: "The right of marshaling is not founded on what may be considered as a contract between debtor and creditor, but rests upon a natural and moral equity that the will and caprice of one creditor, who has within his reach a double fund, shall not be allowed to determine whether another creditor is to be disappointed of his payment."

Still further the same author, on page 1263, says: "If the senior creditor will not thereby be unreasonably delayed or inconvenienced, or prevented from obtaining full payment of his debt, he may be restrained by injunction from proceeding against the doubly charged security."

The doctrine of marshaling of securities, as well as the principle upon which it rests, as stated in the above quotation, is recognized and applied in authorities too numerous to cite, and has been expressly applied by decisions of the higher courts of this State. (Brown v. Thompson, 79 Texas, 58; Ohio Cultivator Co. v. People's Nat'l Bank, 22 Texas Civ. App., 643; Willis v. Holland, 13 Texas Civ. App., 689; Wahrmund v. Edgewood Distilling Co., 32 S. W., 228.)

In support of his order the trial judge must be presumed to have found that the allegations of appellee's cross-bill, to the effect that appellant would not be delayed or inconvenienced in the collection of its debt by requiring it to first exhaust its other securities before proceeding to enforce the collection of the note sued on, are true, and such being the case no wrong or injustice will be done appellant by the enforcement of said order.

It seems clear from the authorities before mentioned that, unless the fact that appellee occupies the dual relation of a debtor to appellant as well as that of a creditor with appellant of their common debtor, T. W. House, so shortens the arm of equity as to render it impotent to prevent appellant from using its power as a paramount creditor as an instrument of injustice to appellee, the trial court did not err in granting the relief prayed for by appellee.

In none of the cases relied on by appellant to sustain its contention did the debtor bear any relation to the party against whom the doctrine of marshaling of securities was invoked, other than that of a primary debtor who had no lien upon, and no interest in, the subject matter of the suit other than that of maker of the obligation sued on.

In the case of Rogers v. Meyers, 68 Ill., 92, the maker of the note sought to enjoin suit for its collection by an assignee thereof until such assignee should first foreclose a mortgage on real estate given by the maker to secure the payment of said note, the equity of redemption in said real estate having been previously purchased by a third party at a sale under execution against the maker of the note and mortgage. In deciding the case the court says: "We are unable to perceive any right held by Meyers to which appellant has any just claim to be subrogated. He is legally and equitably bound to pay the debt to Meyers, and should

pay the bank (the purchaser of the equity of redemption) or lose the property they have purchased. We do not see that the principle that where a creditor has a lien on two funds, and another creditor has a lien on one of those funds, the former will be required to satisfy his claim out of the fund upon which the other has no lien, can be applied in this case. That is a rule that may be invoked as between different creditors, but has, so far as we are aware, never been applied as between debtor and creditor. There is no pretense that appellant does not justly owe the debt, nor is any just reason urged why he should not pay it or why it should not be enforced in the suit at law. We can see no ground for enjoining the suit on the note, and the court below did right in dismissing the bill, and the decree is affirmed."

As before said, we think this case easily distinguishable from the one we are considering, in that no other relation than that of debtor to creditor was shown between the party invoking the doctrine of marshaling securities and the defendant who was sought to be enjoined from the collection of his debt, and the plaintiff had no lien of any kind upon said note, nor interest therein other than as the maker. The case of Haas v. Bank of Commerce, 60 N. W., 85, can be distinguished in the same way.

There is no merit in the contention that because appellee may, upon payment of the note, be entitled to subrogation *pro tanto* to appellant's rights in the other securities held by it, that he is therefore not entitled to the remedy of injunction. The remedy by subrogation not affording as practical, prompt and efficient protection to appellee as the relief afforded by injunction, its existence can not defeat his right to injunction. Sumner v. Crawford, 91 Texas, 129.

We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.